IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

BOBBI-JO ISENBERG,

             Plaintiff,                          21cv1147
                                              ELECTRONICALLY FILED

             v.

STATE FARM FIRE AND CASUALTY
COMPANY,

             Defendant.

**MEMORANDUM OPINION OF COURT**
**DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (ECF 52)**

       Before the Court is State Farm Fire and Casualty Company's Motion for Summary

Judgment and Brief in Support of same.  ECF 52 and ECF 53.  Plaintiff timely filed a Response

and Brief in Opposition to same.  ECF 55 and ECF 57.  The matter is now ripe for adjudication.

**I.  Background and Procedural History**

       The following facts are relevant and uncontested unless otherwise indicated.

       This insurance dispute involves a homeowner's insurance policy issued to Plaintiff by

Defendant.  The policy of insurance was issued to Plaintiff in 2018 when Plaintiff purchased a

property located at 2019 Pennsylvania Avenue, New Castle, Pennsylvania, ("the Property") for

$30,000.00.  After purchasing the Property, Plaintiff and Edward Wright began to conduct

renovations on the Property.

       At the time Plaintiff purchased the Property in 2018, she was living in an apartment

("Apartment") in New Castle.  Plaintiff renewed her Apartment lease annually and her most

relevant lease term began March 1, 2020, and ended March 1, 2021.  Thus, Plaintiff continued to

rent her Apartment during the same time period that she owned and insured the Property, while she engaged in unexpected and extensive renovations to the Property.

On May 13, 2020, a fire destroyed the Property which prompted Plaintiff to make a claim under Defendant's insurance policy for the fire damage.  The homeowner's insurance policy issued by Defendant listed Plaintiff as the insured, was effective as of the date of the fire, and the insured Property was 2019 Pennsylvania Avenue, New Castle, Pennsylvania.

During the course of Defendant's investigation of the insurance claim made by Plaintiff, Defendant rescinded the policy.  Defendant's recission was based on its belief that Plaintiff was not using the Property as a residence because, from the date of purchase to the time of the fire, she continued to live in an apartment with her two daughters, ages 3 and 11.

Plaintiff brought the instant lawsuit in the Court of Common Pleas of Philadelphia County, Pennsylvania, but Defendant removed the case to this Court on June 15, 2021.[1]  ECF 1, ECF 1-3.  Plaintiff and Defendant engaged in discovery – which has now closed – and Defendant filed the instant motion for summary judgment essentially arguing that the homeowner's insurance policy required the Property to be Plaintiff's residence premises in order for coverage to apply.  Defendant contends that because Plaintiff was not using the Property as a residence, she cannot avail herself of the coverage under this policy – implicitly arguing that a person may only have one "residence."

Plaintiff counters that her actions in relationship to the Property qualify the Property as a "residence," and for this reason, she argues that Defendant's Motion should be denied.[2]  Plaintiff

---

[1] This Court has diversity jurisdiction over this case because Plaintiff is a citizen of a different state than Defendant and the amount in controversy exceeds $75,000.00.  28 U.S.C. 1332(a)(2).  Because the Property at issue was/is located in New Castle, Lawrence County, Pennsylvania, venue with this Court is proper.

[2] In addition, Plaintiff also contends that the issue as to whether her actions qualify the Property as a residence premises is a question of fact for the jury to decide.

argues that although she maintained a residence at the Apartment, her almost daily contact with the Property – which was located just over two miles from the Apartment – to conduct manual labor to rehabilitate the premises in order to make it habitable for herself and her family, combined with the fact that she ate some meals there, stored numerous personal possessions there, and slept there from time to time, all support her claim that the Property was also her residence – albeit a second residence.

## II.  Standard of Review

Summary judgment may be granted if, drawing all inferences in favor of the non-moving party, "the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a); *see also Melrose, Inc. v. Pittsburgh*, 613 F.3d 380, 387 (3d Cir. 2010).

A fact is "material" if proof of its existence or non-existence might affect the outcome of the suit under applicable law. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248, (1986); *see also Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir. 2011).  Disputes must be both (1) material, meaning concerning facts that will affect the outcome of the issue under substantive law, and (2) genuine, meaning there is sufficient evidence supporting the claimed factual dispute "to require a jury or judge to resolve the parties' differing versions of the truth at trial. *In re Lemington Home for Aged*, 659 F.3d 282, 290 (3d Cir. 2011); *see also S.H. ex rel. Durrell v. Lower Merion School Dist.*, 729 F.3d 248 (3d Cir. 2013).

A party moving for summary judgment has the initial burden of supporting its assertion that fact(s) cannot be genuinely disputed by citing to particular parts of materials in the record – *i.e.*, depositions, documents, affidavits, stipulations, or other materials – or by showing that: (1) the materials cited by the non-moving party do not establish the presence of a genuine

dispute, or (2) that the non-moving party cannot produce admissible evidence to support its fact(s).  Fed.R.Civ.P. 56(c)(1).  The moving party may discharge its burden by "pointing out to the district court" the "absence of evidence to support the nonmoving party's case" when the nonmoving party bears the ultimate burden of proof for the claim in question.  *Conoshenti v. Public Service Elec. & Gas Co*, 364 F.3d 135, 140 (3d Cir. 2004) (quoting *Singletary v. Pennsylvania Dept. of Corrections*, 266 F.3d 186, 192 n. 2 (3d Cir. 2001)).

Conversely, in order to defeat a motion for summary judgment, the non-moving party must support its assertion that fact(s) are genuinely disputed by citing to particular parts of materials in the record, or by showing that: (1) the materials cited by the moving party do not establish the absence of a genuine dispute, or (2) the moving party cannot produce admissible evidence to support its fact(s).  Fed.R.Civ.P. 56(c)(1).  When determining whether there are any genuine issues of material fact, all inferences should be drawn in favor of the non-moving party. *Berckeley Inv. Group, Ltd. v. Colkitt*, 455 F.3d 195, 201 (3d Cir. 2006).

In reviewing a motion for summary judgment, the court does not make credibility determinations, and summary judgment is "inappropriate when a case will turn on credibility determinations." *El v. Southeastern Pennsylvania Transp. Authority*, 479 F.3d 232 (3d Cir. 2007).

**III. Discussion**

### A.  Definition of "Residence Premises" in an Insurance Contract

Under Pennsylvania law, the Court interprets the insurance contract to determine whether coverage exists under the policy at issue.  *Gerow v. State Auto Prop. & Cas. Co.*, 346 F. Supp. 3d 769, 778 (W.D. Pa. 2018), *citing, Minn. Fire & Cas. Co. v. Greenfield*, 855 A.2d 854, 861 (Pa. 2004).  The goal of the Court is to ascertain the intent of the parties as manifested by the

language of the written policy.  *Morton v. Gardner*, 488 F. Supp. 3d 200, 207 (W.D. Pa. 2020) *citing*, *Standard Venetian Blind Co. v. Am. Empire Ins. Co.*, 469 A.2d 563, 566 (1983); see also, *Donegal Mut. Ins. Co. v. Baumhammers*, 938 A.2d 286, 290 (Pa. 2007) (The Court's goal when interpreting a policy is to "ascertain the intent of the parties as manifested by the terms used in the insurance policy.").

"Words of 'common usage' in an insurance policy are to be construed in their natural, plain, and ordinary sense, and a court may inform its understanding of these terms by considering their dictionary definitions." *Gerow, supra., citing, Wall Rose Mut. Ins. Co. v. Manross*, 939 A.2d 958, 962 (Pa. Super. Ct. 2007).  "[C]ourts must construe the terms of an insurance policy as written and may not modify the plain meaning of the words under the guise of 'interpreting' the policy." *Id., citing, Lucker Mfg., A Unit of Amclyde Engineered Prods., Inc. v. Home Ins. Co.*, 23 F.3d 808, 814 (3d Cir. 1994).

When considering the definitions and terms in any contract, including an insurance policy such as the one before this Court, this Court must also determine whether the terms in the policy at issue are ambiguous.  Where a provision of a policy is ambiguous, it is to be construed in favor of the insured and against the insurer.  *Morton*, 488 F. Supp. 3d at 207.  A term is ambiguous if there is more than one reasonable interpretation of the term.  If the term is unambiguous, the Court must ascribe the plain meaning of that term.  *Gerow,* 346 F. Supp. 3d at 778.

The relevant and contested portion of the insurance policy at issue reads as follows:

**COVERAGE A- DWELLING**

1. Dwelling. We cover the dwelling used principally as a private residence on the residence premises shown in the Declarations.

The Homeowners Insurance Policy further defines the pertinent terms as follows:

*        *        *

5. "insured location" means:

      a. the residence premises;

*        *        *

10. "residence premises" means:

      a. the one, two, three or four-family dwelling, other structures and grounds, or

      b. that part of any other building; where you reside and which is shown in the Declarations.

ECF 55-3, p. 12.[3]

### B. *Gardner* and *Gerow* Cases

With the above specific contract provisions in mind, the Court notes that other United States District Courts within the Western District of Pennsylvania have considered the meaning behind the terms, "residence premises" and "resident."  For example, in *Gerow, supra,* Judge Gibson held as follows:

> "Pursuant to Pennsylvania law, construction of the term 'resident' in an insurance policy is a matter of law." *Mu'Min v. Allstate Prop. & Cas. Ins. Co.*, Civil Action No. 10-7006, 2011 WL 3664301, at *9 (E.D. Pa. Aug. 17, 2011).  Pennsylvania courts have held that the word "resident" in an insurance policy, even if undefined, is unambiguous. *Wall Rose Mut. Ins. Co. v. Manross*, 939 A.2d 958, 964 (Pa. Super. Ct. 2007).  "Residence" refers to "a factual place of abode evidenced by a person's physical presence in a particular place." *In re Residence Hearing Before the Bd. of Sch. Dirs., Cumberland Valley Sch. Dist.*, 560 Pa. 366, 744 A.2d 1272, 1275 (2000) (citations and internal quotations omitted). The term "requires, 'at the minimum, some measure of permanency or habitual repetition.' " *Wall Rose*, 939 A.2d at 965 (quoting *Erie Ins. Exch. v. Weryha*, 931 A.2d 739 (Pa. Super. Ct. 2007)). "Also, '[s]ince resident

---

[3] The declaration page of the policy identifies the Property's address as 2019 Pennsylvania Ave., New Castle, Pennsylvania.

status is a question of physical fact,' intention is not a relevant consideration." *Id.* (*citing Amica Mut. Ins. Co. v. Donegal Mut. Ins. Co.,* 376 Pa.Super. 109, 545 A.2d 343, 348 (1988) ); *see also Campbell*, 2018 WL 3468214, at *1 ("Plaintiff's reliance on her intention to return to the dwelling at a future date . . . does not establish 'residence.' ").

When inquiring into residency, courts look at objective indicators "such as where an individual sleeps, takes her meals, receives mail, and stores personal possessions." *Allstate Ins. Co. v. Naskidashvili,* Civil Action No. 07-4282, 2009 WL 399793, at *3 (E.D. Pa. Feb. 16, 2009*); see Chen*, 2012 WL 460416, at *6; *Mu'Min*, 2011 WL 3664301, at *9. "[W]hen a person actually lives in one location, and sporadically visits, or keeps certain personal items at, another location, it is the location where he lives that is his residence," not the location he sporadically visits. *Gardner*, 544 F.3d at 560.

346 F.Supp.3d at 779.

In *Gerow,* the Gerow family lived at 769 Viewmont Street in Johnstown, Pennsylvania. After Mrs. Gerow's father died, Mrs. Gerow and her two minor children moved to Connecticut to live with Mrs. Gerow's mother.  Mr. Gerow, for his employment, spent a great deal of time commuting between Washington D.C. and the place where his family resided – which, at the time of the loss, was Connecticut.  The record evidence showed that at the time of the loss, the family filed tax returns from the Johnstown address, they did not turn off the utilities there, they did not rent or sell the Johnstown property, they received some mail there and forwarded other mail to Connecticut, and they continued to bank in Johnstown.  The evidence also showed that Mr. Gerow only spent three to four days per month at the Johnstown property, while Mrs. Gerow only returned to the Johnstown property five to ten times total.  As a result of these facts, the Court in *Gerow* noted, that the policy holder, "lack[ed] the touchstone of residency – regular physical presence at the [s]ubject [p]roperty."  *Id.*  In reaching this conclusion, the Court in *Gerow* relied on the Court of Appeals decision in *Gardner,* specifically quoting the portion of that opinion which stated, "when a person actually lives in one location, and sporadically visits,

or keeps certain personal items at, another location, it is the location where he lives that is his residence." 544 F.3d at 560.

In *Gardner*, the policyholder had lived at his insured property for over ten years. *Id.* at 556. The policyholder moved out of his insured property to take up residence with his girlfriend who lived around the corner from the insured property, and rented his insured property to a third party. While the insured property was being rented, the renter's mother slipped and fell on the sidewalk outside of the insured property. The renter sued the policyholder who, in turn, claimed coverage under his homeowner's policy. The insurance company denied coverage noting that the property was not being used by the policyholder as his own personal residence – rather, it was being used by the policyholder as a rental property, and the policy contained an exclusion which specifically disallowed coverage under such circumstances. Based on these factual circumstances, the *Gardner* court held, "[a]s a matter of physical fact, [the policyholder] was not living at the Property, but, rather, was living on Scott Street."

### C. Applicability of the *Gardner/Gerow* Cases to the Instant Matter

Turning to the facts of the instant matter, Plaintiff has testified that she purchased the homeowner's policy when she purchased the Property in 2018. Although Plaintiff testified that from 2018, until the fire in May of 2020, she did not "live" or "reside" at the Property, she did spend numerous nights at the Property. ECF 55-5, p. 69-70. She explained that she worked nights and was present at the Property "every single day" – or, at least three to four days per week – working on the house to make it habitable.[4] Id., p. 69.

---

[4] Plaintiff also testified at length that her children's father helped, financially, and seemingly with sweat equity, with some of the projects at the Property, but notably the Property was purchased by Plaintiff for cash with money she obtained from an automobile accident settlement. She ended the relationship with her children's father in February of 2020, and believes he resided at the Property for some unknown period of time until Plaintiff had him removed by the local police. See ECF 52-4 and ECF 55-5.

8

For example, she noted that when she purchased the home, she did not know the

electrical system was comprised of knob and tube wiring.  When she removed the plaster walls

in the bedrooms, she decided to replace the knob and tube wiring with modern electrical wiring

and increase the number of electrical outlets in the bedrooms – which previously, only had one

outlet per bedroom.  Id., p. 69-70.  Additionally, around the time of the fire, Plaintiff had been in

the process of installing drywall and "wood plank flooring" throughout the entire home.  Id., at

76, 79.  Although the water had not yet been turned on at the Property, the electricity was

working and had been used by the Plaintiff.  Id., p. 69, 82; and ECF 52-4.

On the day of the fire, Plaintiff went to the Property where she met her aunt who was

going to help Plaintiff pick up drywall from Busy Beaver.  Id., p. 106.  Plaintiff testified that she

and her aunt were at the Property around 5:30 p.m. and that her deep freezer, located in the

basement, was plugged in and working, as was her microwave, located in the kitchen, along with

several night lights, placed throughout the home.  Id, p. 107-109.  She took her aunt through all

floors of the home to show her the progress that had been made (and what still needed to be

done) to restore and rehabilitate the Property.  Id., p. 106-110.

While Plaintiff worked on the home to make it habitable, she continued to live at the

Apartment with her children.  For instance, Plaintiff sent her oldest daughter to school in the

New Castle school district (the school district where the Apartment was located), and not the

Shenango school district where the Property was located.  The Apartment was/is located only 2.1

miles from the Property.  ECF 55-2.

The Property was filled with Plaintiff's personal belongings – including cookware,

flatware, china, most of her furniture, electronics, the children's toys, two televisions, family

picture albums, and the like.  (ECF 55-6 provides a complete, detailed list of Plaintiff's personal

property located at the Property and states.)  However, the Apartment also held some of

Plaintiff's personal possessions – notably her bed and one television set.  As noted above,

Plaintiff maintained a deep freezer at the Property, as well as a microwave, to (presumably)

enable her to make meals on the premises.   Simply stated, Plaintiff expressed in a writing, "We

had almost everything down there [at the Property] except for the essentials like our bed.  We

had a TV at the [A]partment and stuff.  But everything was down at the other house [the

Property]." ECF 55-6.

Plaintiff paid her property tax for the Property and her pay stubs reflect the Property's

address, and not that of the Apartment.  ECF 55-2, p. 13, 15; ECF 55-5, p. 49.  She used her

Apartment address for her income tax returns from 2018 and 2019, but notably, each year's tax

return was for income generated in the previous year.  ECF 52-17.   In addition, she paid the

utility bills at the Property (specifically, the electric bill), and there is no evidence of record to

suggest that Plaintiff ever attempted to rent or sell the Property.  ECF 55-2, p. 4-9.  Although

Plaintiff signed a lease for the Apartment for a term beginning on March 1, 2020 and ending on

April 30, 2021, (ECF 52-15) she explained that she "was planning on moving in [the Property] at

the end of July [of 2020]."  ECF 55-2, p. 62.

### D.  Ruling in the Instant Matter

Given that the case law suggests that residency requires "some measure of permanency or

habitual repetition" (*see Wall Rose*, 939 A.2d at 965), this Court finds that the undisputed facts

surrounding Plaintiff's situation (as recounted above) <u>do</u> support a finding that Plaintiff resided

at the Property.  Plaintiff exhibited a "measure of permanency" as well as "habitual repetition"

by indicating (with no evidence presented to the contrary) that she was present at the Property on

an almost daily basis to perform work on the Property.   In fact, on the day of the fire, Plaintiff

10

hoped to secure drywall for the Property and toured her aunt through the Property to have her assess the progress that had been made and consider what still needed to be completed.

In addition, considering the objective indicators set forth in the above-cited case law, such as where Plaintiff took her meals, slept (on occasion), and the location of her own possessions as well as her daughters' personal possessions (*see Naskidashvili*, Civil Action No. 07-4282, 2009 WL 399793, at *3), the facts present in this case support a finding that Plaintiff resided at the Property.   Case law also suggests that residency is a question of <u>physical fact</u> and that the policyholder's intention is not a relevant consideration (*see Amica Mut. Ins. Co*., 545 A.2d at 348), and it is clear from the record that Plaintiff was physically present at the Property almost daily.   To put it succinctly, most of Plaintiff's waking hours each day were spent at the Property.   Plaintiff here, as established by *Gerow*, exhibited the "touchstone of residency – regular physical presence" at the Property.

Furthermore, the caselaw upon which Defendant relies in support of its summary judgment motion (and which provides this Court with its framework for analyzing whether Plaintiff resided at the Property), are factually distinguishable from the instant case.   For example, in the seminal case *Gardner*, and other cases like *Gerow*, *Chen*, *Naskidashvili,* the Court notes that in each of those cases the policyholders were leaving or had already left the insured properties for another property.   Their contact with the insured property was minimal, at best, and there was no regular or "habitual" physical contact between policyholder and insured premises.   Here, the opposite is true: Plaintiff, the policyholder, had constant, habitual, daily contact with the insured premises for the express purpose of completing renovations at the Property so the insured's family could move into the Property on a full-time basis.

Moreover, as noted in *Gardner* and *Gerow* "when a person actually lives in one location, and sporadically visits, or keeps certain personal items at, another location, it is the location where he lives that is his residence."  This Court finds that Plaintiff was not "sporadically" visiting the Property.  Additionally, she appears to have been keeping the majority of her personal possessions – including toys and furniture at the Property – while retaining a minimal amount of her belongings at the Apartment.  She ate some meals at the Property and slept on occasion at the Property, despite the fact that the water had not yet been turned on, while spending most days working on the Property to complete the house.

*Amica* informs this Court that "residency is a question of physical fact and that the policyholder's intention is not a relevant consideration."  This Court does not base its opinion on Plaintiff's intent to live full-time at the Property.  Rather, this Court's decision is based on the criteria established by the *Gardner*/*Gerow* caselaw which, when applied, have guided this Court's finding that Plaintiff was a resident of the Property.

This Court also notes that Pennsylvania courts and federal courts within our Circuit applying Pennsylvania law "have agreed or at least assumed that a person is not limited to one residence." *Hillmer v. Esurance Prop. & Cas. Ins. Co.,* 559 F. Supp. 3d 402, 412 (E.D. Pa. 2021).  *See also GEICO Cas. Co. v. Alicea*, 416 F. Supp. 3d 425, 432 (W.D. Pa. 2019) ("It is certainly possible that one can have only one domicile, which as a person's principal establishment, implies a certain unique status. Residence though has always been regarded as something more fluid and less permanent than a domicile, and there is no reason to believe one cannot have a sufficient physical presence at more than one place to establish a residence.").

**IV. CONCLUSION**

The Court finds that Plaintiff had regular and habitual ties to the Property such that the Property should be considered one of Plaintiff's residences under the terms of the homeowner's insurance policy issued by Defendant.  Because Pennsylvania law recognizes that Pennsylvania citizens may have more than one residence, and because, here, dual residency exists, the Court finds that Defendant's insurance policy provides coverage to the residence named on its declarations page – namely the Property.  Thus, Plaintiff had more than one residence as is defined by caselaw at the time of the loss, and because one of the residences she occupied is the Property which Defendant insured, this Court must deny Defendant's Motion for Summary Judgment.

An appropriate Order follows.


                                                    s/   Arthur J. Schwab
                                                    United States District Judge

cc:      All counsel of record

13